[Civ. No. 47274. Second Dist., Div. Two. May 24, 1976.]

CARL HELMERSHAUSEN SKINNER, Plaintiff and Respondent, v. HERMAN SILLAS, JR., as Director, etc., Defendant and Appellant.

## Counsel

Evelle J. Younger, Attorney General and Thomas Scheerer, Deputy Attorney General, for Defendant and Appellant.

Thompson, Lyders, Laing & Childers and Edwin L. Laing for Plaintiff and Respondent.

## Opinion

**ROTH, P. J.**—Respondent was arrested on February 18, 1974, at 2:26 p.m. in Oxnard for violating section 23102 of the Vehicle Code.[1] He refused to take a field sobriety test. When booked at the police station at 3 p.m., he was advised pursuant to section 13353 that he must take one of the tests either blood, urine, or breath. He elected urine and was escorted to the urinal by one of the arresting officers, whereupon he said to the officer "Don't watch" and "close the door." The officer refused to close the door and respondent said "Take your fucking bottle and shove it."

The arresting officers filled out and signed under penalty of perjury the statement required by section 13353 and mailed it to the Department of Motor Vehicles (DMV). Officer Alvarez who was not one of the arresting officers and who knew respondent had refused the test, later that day filed a report stating that when respondent was removed from the holding tank to "fill out a request for an O.R. . . . . he requested to use the bathroom" and "The suspect then requested to give a urine sample; the R/O then took the same at 1935 hours."

On February 27, 1974, nine days after respondent had been booked, a sergeant of the Oxnard Police Department advised DMV by letter that

---

[1]Unless otherwise stated all further references are to the Vehicle Code.

the original statement filed by the arresting officers was in error and the police department records should indicate respondent had in fact provided a urine sample. The sergeant's letter requested: "Would you kindly return the aforementioned form 13353, and strike any reference to a refusal by Mr. Skinner from the record regarding this arrest."[2]

On March 12, 1974, respondent pleaded guilty to a charge of violating section 23102 and the docket shows the deputy district attorney stipulated that respondent had given "a sample of urine and did not refuse to abide with implied consent law."

On June 7, 1974, respondent was notified by DMV because of his refusal and failure to submit to a chemical test, his license would be suspended for a six-month period effective June 21, 1974. Respondent requested a hearing which was held. The referee found that respondent had refused to submit to "any chemical test of [his] blood, breath, or urine after being requested to do so by the officer." Respondent was again notified that his license would be suspended for six months. He then petitioned the superior court for a writ of mandate (Code Civ. Proc., § 1094.5) and the writ was granted. The court found: (1) the proceedings were invalid as the police department had withdrawn its erroneous notification to DMV; (2) the municipal court had approved a stipulation that respondent had complied with the implied consent law and the state and its agencies including DMV were bound by the determination; (3) there was no failure to comply with the implied consent law since the body fluid was accepted and analyzed by the police as the basis for the guilty plea; and finally (4) DMV acted arbitrarily and capriciously in suspending respondent's driver's license.

■ Respondent challenges the validity of the proceedings before DMV because the declaration filed by the arresting officers as required by section 13353 had been withdrawn by the Police Department of Oxnard. Section 13353, subdivision (b) provides: "If any such person refuses the officer's request to submit to, or fails to complete, a chemical test, the department [of Motor Vehicles], upon receipt of the officer's sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor and that the person had refused to submit to, or failed to complete, the test after being requested by the officer, shall

---

[2] Logically and legally this letter was a nullity. Section 13353 makes no provision for such a letter but if implicitly it does, then also implicitly the statements in the letter should be made under penalty of perjury.

suspend his privilege to operate a motor vehicle for a period of six months. . . . "

DMV acquired jurisdiction when the arresting officers mailed to DMV the *sworn statement* that respondent had refused to take one of the three tests. Once the notice had been received by DMV it had no choice but to proceed to suspend the license. Section 13353 does not provide for any retraction of a notice, but subdivision (c) does provide in pertinent part the mechanism for a hearing in case the driver wishes to contest the issue: " . . . For the purposes of this section the scope of the hearing shall cover the issues of . . . *whether he refused to submit to, or failed to complete, the test* after being requested by a peace officer . . . ." (Italics added.) Thus the section itself provides for a hearing that will include the very issue contested at bench. The determination of DMV is of course reviewable on a petition for mandate to the superior court and that court's determination is reviewable by this court and the Supreme Court by way of successive appeals.

Since subdivision (b) explicitly requires a sworn statement to give DMV jurisdiction to start the operation of the administrative mechanism which may result in an order suspending a driver's license, it is our opinion that the jurisdiction of DMV cannot be divested by a letter of retraction made under penalty of perjury or otherwise.[3] (Cf. *Uhl* v. *Collins* (1932) 217 Cal. 1 [17 P.2d 99, 85 A.L.R. 1370]; *Strauss* v. *Board of Supervisors* (1960) 181 Cal.App.2d 133 [5 Cal.Rptr. 294].)

■ Respondent also argues that even if the DMV had the jurisdiction to hold a hearing, the stipulation made in the municipal court collaterally estopped DMV from denying this fact. (*Shackelton* v. *Department of Motor Vehicles, supra,* 46 Cal.App.3d 327.) ■ " 'The criterion to use in determining whether a finding creates collateral estoppel is: Was the finding necessary to the judgment? If it was unnecessary, there is no collateral estoppel . . . .' " (*People* ex rel. *Baker* v. *Mack* (1971) 19 Cal.App.3d 1040, 1049 [97 Cal.Rptr. 448]; *Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 384-385 [295 P.2d 405].) ■ The facts show that respondent pleaded guilty to the charge of driving a motor

---

[3] The fact that DMV decides to hold a hearing would not mean DMV could make a finding contrary to law. It would be bound by any pertinent legal ruling theretofore properly made by a court such as the fact that there was an illegal arrest (*Shackelton* v. *Department of Motor Vehicles* (1975) 46 Cal.App.3d 327 [119 Cal.Rptr. 921]) or that certain prior convictions were constitutionally defective. (*Mitchell* v. *Orr* (1969) 268 Cal.App.2d 813 [74 Cal.Rptr. 407].)

vehicle under the influence of alcohol. (§ 23102.) A conviction of the charge made could have been obtained without a chemical test which determines the amount of alcohol in the blood. The stipulation even if legally sustainable, therefore, was not necessary to the judgment. There was no collateral estoppel.

Further, equitable estoppel is not applicable to the facts. Equitable estoppel requires: "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. . . . " (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].) There is nothing in the record to indicate that the prosecutor in the municipal court induced respondent to enter a guilty plea upon the representation that such stipulation would be binding upon DMV and there was no showing of any privity between the prosecutor and DMV. (*Crumpler* v. *Board of Administration* (1973) 32 Cal.App.3d 567, 582-583 [108 Cal.Rptr. 293].)

Respondent next contends that if DMV is not estopped, the facts as disclosed at the administrative hearing show respondent did in fact perform a urine test and therefore he has complied with the implied consent law. (§ 13353.) We do not agree. The public policy of this state expressed in section 13353 is elaborated upon in *People* v. *Superior Court (Hawkins)* (1972) 6 Cal.3d 757 [100 Cal.Rptr. 281, 493 P.2d 1145]. In *Hawkins* the court stated, at page 765, in pertinent part: " . . . [T]he shocking number of injuries and deaths on the highways caused by drunk drivers has compelled society to adopt extreme measures in response. By its enactment in 1966 of section 13353, the Legislature devised an additional or alternate method of compelling a person arrested for drunk driving to submit to a test for intoxication, by providing that such person will lose his automobile driver's license for a period of six months if he refuses to submit to a test for intoxication. The effect of this legislation is to equip peace officers with an instrument of enforcement not involving physical compulsion. It is noteworthy that in so doing, the Legislature took pains to condition its use upon a lawful arrest for driving under the influence of intoxicating liquor and upon the reasonable belief of the peace officer that the arrestee was in fact so driving."

The implied consent law as expressed in section 13353 has been consistently construed to prevent a driver who is suspected of driving under the influence to base a failure to take a test on tenuous excuses such as the claimed right of privacy at bench. (*Quesada* v. *Orr* (1971) 14 Cal.App.3d 866 [92 Cal.Rptr. 640].) Thus a driver has no right to be told of all three possible tests, as long as he is told of one and thereafter takes the test of which he has been informed.[4] (*People* v. *Brannon* (1973) 32 Cal.App.3d 971 [108 Cal.Rptr. 620].) If the driver elects to take one of the three tests, he must complete the test or he will be deemed to have refused and failed to take it. (*Cahall* v. *Department of Motor Vehicles* (1971) 16 Cal.App.3d 491 [94 Cal.Rptr. 182]; *Quesada* v. *Orr, supra,* 14 Cal.App.3d 866.) And, too, once the suspect refuses to take one of the three tests, blood, urine, or breath, there is no requirement that the officers thereafter give him a test when he decides he is ready. (*Zidell* v. *Bright* (1968) 264 Cal.App.2d 867 [71 Cal.Rptr. 111].)

It is clear that approximately four and one-half hours after respondent refused and failed to take a urine test, he requested and was granted permission by a police officer who did not arrest respondent to take it. A police officer acting with the best of motives cannot nullify the public policy of this state.

"It is a matter of common knowledge that the intoxicating effect of alcohol diminishes with the passage of time. [5] In a matter of a few hours an intoxicated person may 'sober up.' The efficacy of a blood test depends upon its being made as soon as possible after the time of the

---

[4]The statement which under section 13353 must be transmitted by the arresting officer to DMV as printed under the line for the officer's signature is as follows: "NOTE: If the person arrested either is incapable, or states that he is incapable, of completing any chosen test, he shall then have the choice of submitting to and completing any of the remaining tests or test, and he shall be advised by the officer that he has such choice. (Sec. 13353a V.C.)."

[5]Since it is important to take the test as soon as possible after the driving, a suspect has no right to condition his taking of the test upon a condition that his attorney or doctor be present. (*Wegner* v. *Department of Motor Vehicles* (1969) 271 Cal.App.2d 838 [76 Cal.Rptr. 920]; *Ent* v. *Department of Motor Vehicles* (1968) 265 Cal.App.2d 936 [71 Cal.Rptr. 726]; *Funke* v. *Department of Motor Vehicles* (1969) 1 Cal.App.3d 449 [81 Cal.Rptr. 662].)

In *Wegner* v. *Department of Motor Vehicles, supra,* 271 Cal.App.2d 838, the driver refused to take a test and after he was released he went to a doctor who took a blood sample from the driver. The court said there was nothing in section 13353 that prevented a defendant from having an additional test made by his own physician, but the defendant may not condition his taking of a test upon the test being conducted by a physician of his choice.

offense. To be of any probative value the test must be 'near' to the offense in point of time. If it is not taken promptly after the arrest, it proves nothing." (*In re Newbern* (1959) 175 Cal.App.2d 862, 866 [1 Cal.Rptr. 80, 78 A.L.R.2d 901]; compare *Zidell* v. *Bright, supra,* 264 Cal.App.2d 867.) In *Zidell,* the court after examining the language of subdivision (a) of section 13353 stated: "This language implied that the decision of the arresting officer whether to request a test, and the suspect's response thereto, should not be delayed. . . ." (*Zidell, supra,* at p. 870.)

Moreover, the section requires that the officer notify DMV by means of a sworn statement if a suspect refuses to submit to any of the enumerated tests. In most cases it will be the arresting officer who will notify the suspect of the implied consent law and it will be the arresting officer who will either give the test or take the suspect to a facility where a test can be administered. Under such circumstances it would be inconsistent with the purposes of the statute to require the officer to sit around and wait until the suspect believes he is ready to take the test. (See *Zidell* v. *Bright, supra.*)

The purpose of the statute is to take the test as soon as possible after arrest and discover the suspect's blood alcohol content at the time he was arrested for driving under the influence (*Finley* v. *Orr* (1968) 262 Cal.App.2d 656 [69 Cal.Rptr. 139]), since alcohol in the blood system dissipates quickly (*In re Newbern, supra,* 175 Cal.App.2d 862). If a test is refused the officer is required to send a sworn statement to DMV. (§ 13353, subd. (b).)

It may be that acceptance of a later test could be justified, although we know of no cases which so hold and we have been cited to none, upon a showing by a driver that he refused to take a test when first demanded because of a lack of understanding of what was involved due to shock and a disturbed mental and emotional condition. The record before us shows quite eloquently respondent understood the request.

In any event, we have no difficulty in concluding and we so hold that on the facts before us respondent's attempted compliance with the statute approximately four hours after the original demand is no compliance.

The judgment is reversed and the trial court is directed to deny the petition for mandate and to vacate the writ issued pursuant thereto.

Fleming, J., and Compton, J., concurred.

A petition for a rehearing was denied June 15, 1976, and respondent's petition for a hearing by the Supreme Court was denied July 21, 1976.