[Civ. No. 56038. Second Dist., Div. One. Dec. 7, 1979.]

ROBERT H. BUCHANAN, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

George Deukmejian, Attorney General, and Martin H. Milas, Deputy Attorney General, for Defendant and Appellant.

Buchanan & Besser and Robert S. Besser for Plaintiff and Respondent.

**OPINION**

**LILLIE, Acting P. J.**—The Department of Motor Vehicles appeals from judgment granting the petition of Robert Buchanan for peremptory writ of mandate to direct the department to set aside its order suspending Buchanan's driving privilege for six months for his refusal to submit to a chemical test to determine the alcoholic content of his blood following his arrest for driving a motor vehicle while under the influence of intoxicating liquor. (Veh. Code, § 13353.)

At the administrative hearing before the department, it was stipulated that the arresting officer had reasonable cause to believe that Bu-

chanan was driving under the influence of intoxicating liquor, and that his arrest was lawful. The officer then testified: at the time of the arrest, reading from a form, he advised Buchanan that he was required by law to submit to a chemical test to determine the alcoholic content of his blood, that he had a choice of whether the test was to be of his blood, breath or urine, and that if he refused to submit to a test or to complete a test his driving privilege would be suspended for six months; Buchanan replied that he would tell the officer which test he wanted when they reached the police station; the officer stated that they soon would come to the hospital which administers blood tests for the police department and that if Buchanan wanted a blood test he would have to indicate that choice before they reached the hospital so that the test could be administered there en route to the police station; the officer explained that if Buchanan did not choose a blood test before the police car reached the hospital, such a test "would be out" because once he arrived at the police station he would not be taken back to the hospital for a blood test;[1] Buchanan again stated that he would specify his choice of a test at the police station; the officer replied that Buchanan's choice there would be limited to a breath test or a urine test; at the station, the officer asked Buchanan which of those two tests he wanted; he stated that he wanted a blood test and was told that such a test "was out' because he had refused it en route to the station; the officer asked Buchanan if he would take a breath test; Buchanan pointed to his lips and shook his head, saying nothing; the officer then asked him if he would take a urine test and received the same response.

Buchanan testified: the officer did not read to him the statement of his right to choose among the three types of tests, but offered him only a blood test; he told the officer that he understood he had the right to a choice of three tests;[2] the officer replied that he had the right to a blood test and if he wanted one he would have to say so then and there; Buchanan did not reply, and no mention of a breath or a urine test was made at that time; at the police station, the officer asked him if he wanted a breath test or a urine test; he again replied that he thought he had a choice of three tests; the officer repeated that he had a choice of a breath or a urine test; Buchanan said nothing.

[1]When Buchanan was so advised, the police car in which he and the officer were riding was five to seven miles from the hospital. The police station is about three miles beyond the hospital.

[2]Buchanan testified that because he is an attorney, he was familiar with the requirement that he be given the right to choose among three tests to determine the alcoholic content of his blood.

The hearing officer found: Buchanan was told that his driving privilege would be suspended for six months if he refused to submit to a chemical test of the alcoholic content of his blood; he refused to submit to such a test of his blood, breath or urine after having been requested to do so by the officer. The department adopted the foregoing findings and ordered that Buchanan's driving privilege be suspended for six months.

In the proceeding on Buchanan's petition for writ of mandate to set aside the department's order, the trial court found as facts: the evidence at the administrative hearing established that Buchanan was advised en route to the police station that he would have to elect, prior to reaching the station, whether or not he would take a blood test; he stated that he would decide at the station, but was told by the arresting officer that he could not do so; at the police station Buchanan was given the choice of a breath or a urine test, but was not offered the opportunity to take a blood test. As conclusions of law the court determined: the arresting officer's procedure that required Buchanan to elect whether or not to take a blood test before arriving at the police station, and to choose between only a breath or a urine test at the station, is unauthorized by statute, regulation or case authority; Buchanan's statement in the police car that he would decide at the station which test to take did not constitute a refusal to submit to a chemical test; the department's finding that Buchanan refused to submit to a chemical test of his blood, breath or urine is not supported by substantial evidence.

 The trial court erred in its conclusion that there is no authority for the officer's having required Buchanan to elect whether or not to take a blood test before reaching the police station, and having limited his choice there to a breath or a urine test.

Vehicle Code section 13353 provides in part: "(a) Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor. *The test shall be* incidental to a lawful arrest and *administered at the direction of a peace officer* having reasonable cause to believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. . . . [¶] The person arrested shall have the choice of

whether the test shall be of his blood, breath or urine, and he shall be advised by the officer that he has such choice." (Italics added.) Section 13354 provides in part: "(a) Only a physician, registered nurse, licensed vocational nurse, duly licensed clinical laboratory technologist or clinical laboratory bioanalyst, or certified paramedic acting at the request of a peace officer may withdraw blood for the purpose of determining the alcoholic content therein."

Thus, the arrestee is given the right to choose among the three tests, but he is not given the further right to specify when the test which he has chosen is to be administered. Section 13353, by providing that the test shall be administered at the direction of a peace officer, impliedly gives the officer that right. However, while the test must be administered at his direction, the officer is not authorized to withdraw blood in the event the arrestee chooses a blood test; only the persons enumerated in section 13354 may withdraw blood, and they are to be found in a hospital, not at a police station. We note also that the efficacy of a blood test depends on its being made as soon as possible after the time of the offense; if not taken promptly after the arrest, it proves nothing. (*Skinner* v. *Sillas* (1976) 58 Cal.App.3d 591, 598-599 [130 Cal.Rptr. 91].) Accordingly, the arresting officer had at least implied authority (1) to require that Buchanan, if he wanted a blood test, make that choice known before reaching the hospital so that the test could be administered there en route to the police station, and (2) to limit his choice at the station to a breath or a urine test.

We turn now to the question whether Buchanan's conduct constituted a refusal to submit to any of the chemical tests offered him. ■ The trial court determined that the department's finding of such a refusal was not supported by substantial evidence.[3] On this appeal, we occupy

[3]Since the right to a driver's license is not a fundamental right, a trial court properly applies the substantial evidence test, rather than the independent judgment test, in reviewing by administrative mandamus an order of the department suspending a driver's license under Vehicle Code section 13353. (*McGue* v. *Sillas* (1978) 82 Cal.App.3d 799, 803-806 [147 Cal.Rptr. 354].) For this reason, we ignore the trial court's independent findings herein. (See *Simons* v. *City of Los Angeles* (1977) 72 Cal.App.3d 924, 930 [140 Cal.Rptr. 484].) Although we are aware that *McConville* v. *Alexis*, 97 Cal. App.3d 593 [159 Cal.Rptr. 49] holds that a six month's suspension of a driver's license constitutes a substantial interference with a vested fundamental right, and the trial court properly employed the independent judgment test in reviewing the department's decision, we are inclined toward the ruling in *McGue*. However, in light of our holding that petitioner's conduct constituted a refusal as a matter of law and the trial court erred in its conclusion that there is no authority for the procedure used by the officer, we deem the test employed by the trial judge in reviewing the department's decision to be of no significance here.

the same position as the trial court with respect to the administrative record; accordingly, we must review that record to determine whether the department's finding is supported by substantial evidence. (See *Lewin* v. *St. Joseph Hospital of Orange*(1978) 82 Cal.App.3d 368, 386 [146 Cal.Rptr. 892]; *Simons* v. *City of Los Angeles* (1977) 72 Cal. App.3d 924, 930 [140 Cal.Rptr. 484]; *Patterson* v. *Central Coast Regional Com.* (1976) 58 Cal.App.3d 833, 842 [130 Cal.Rptr. 169].)

■ The determining factor on the issue whether a motorist actually "refused" to submit to a test of intoxication, within the meaning of Vehicle Code section 13353, is the fair meaning to be given to his response to the request that he submit to such test, and not his state of mind. (*Maxsted* v. *Department of Motor Vehicles* (1971) 14 Cal.App.3d 982, 986 [92 Cal.Rptr. 579].) ■ A motorist's silence in the face of a police officer's repeated requests that he submit to a chemical test and that he choose a test to determine the alcohol content of his blood, constitutes a refusal to submit to a chemical test under section 13353. (*Lampman* v. *Department of Motor Vehicles* (1972) 28 Cal.App.3d 922, 926 [105 Cal.Rptr. 101].) Buchanan testified that when the arresting officer asked him first whether he wanted a blood test, and later whether he wanted a breath or a urine test, he did not reply; instead, he insisted each time that he was entitled to a choice of the three tests. Such evidence supports the department's finding that Buchanan refused to submit to a chemical test of his blood, breath or urine when requested to do so by the officer.

The judgment is reversed.

Hanson, J., and Kaufmann, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.