[Civ. No. 56353. Second Dist., Div. Five. Feb. 11, 1980.]

JAMES MILTON COVINGTON, Plaintiff and Respondent, v. DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

COUNSEL

George Deukmejian, Attorney General, and Thomas Scheerer, Deputy Attorney General, for Defendant and Appellant.

Atkinson & Gibson and William B. Gibson for Plaintiff and Respondent.

OPINION

HASTINGS, J.—This is an appeal from a judgment which granted a peremptory writ of mandate compelling the Department of Motor Vehi-

cles (DMV) to set aside its decision to suspend James Milton Covington's (respondent) driving privilege for six months pursuant to the implied consent law (Veh. Code, § 13353).

Vehicle Code section 13353, subdivision (b)[1] provides that if a person refuses an officer's request or fails to complete a chemical test, on receipt of the officer's sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle under the influence of intoxicating liquor, DMV shall suspend his privilege to operate a motor vehicle for a period of six months. Pursuant to the section Officer Devine sent to DMV a statement concerning respondent and his refusal to take a test as required when arrested. Based on this sworn statement DMV suspended respondent's license. He appealed and a hearing was held. After the hearing the DMV ruled that the suspension was reasonable and proper. Respondent filed a petition for writ of mandate and after a hearing the superior court granted the petition. This appeal followed.

At the administrative hearing, Officer Devine testified as follows: [Question] "In connection with this arrest did you request that Mr. Covington submit to a chemical test? OFF. DEVINE: Yes, I did. . . . I just verbally requested that he, advised him that he was required by law to submit to a chemical test and he had a choice of either a blood test, a breath test, or a urine test. . . . [H]e elected the urine test. . . . [Question] What happened? OFF. DEVINE: I placed Mr. Covington in the patrol vehicle and a short time later he was, prior to transportation to Whittier Police Department he stated that he would like to submit to a blood test instead of the urine test. At that time he was transported to Whittier Presbyterian Hospital for the blood test. . . . While at Whittier Presbyterian Hospital Mr. Covington signed the required forms by the hospital for the blood alcohol test. When the lab tech arrived Mr. Covington refused to submit to the test stating that he didn't believe me as to the requirements of the test. I then read him 13353 of the vehicle

---

[1]At the time of the arrest (Jan. 1978) section 13353, subdivision (b) of the Vehicle Code provided: "If any such person refuses the officer's request to submit to, or fails to complete, a chemical test, the department, upon receipt of the officer's sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor and that the person had refused to submit to, or failed to complete, the test after being requested by the officer, shall suspend his privilege to operate a motor vehicle for a period of six months. No such suspension shall become effective until 10 days after the giving of written notice thereof, as provided for in subdivision (c)."

code.... [Question] After you read the statement did you have any conversation and discussion? OFF. DEVINE: I then asked him if he would submit to each one of the tests individually. [Question] And what response, if any, did you receive? OFF. DEVINE: He was only going to submit to it with his attorney being present. [Question] Did you respond to that? OFF. DEVINE: I advised him he wasn't entitled to have his attorney present before he decided which test to take or during the test that he chose to take. [Question] And did Mr. Covington respond to that? OFF. DEVINE: He continued to refuse to submit to any of the tests. When I asked him why he wouldn't submit to any of the tests he said he didn't believe me."

Officer Devine testified that this testimony took place approximately at midnight and Mr. Covington was then taken to the Whittier Police Department and booked for a violation of Vehicle Code section 23102, subdivision (a). The booking occurred at about 12:30 a.m. At about this time Officer Devine left. Approximately an hour and a half or an hour and forty minutes later, respondent stated that he wished to be released. Lieutenant Johnson then suggested that he take a breathalyzer test. Respondent consented and two chemical tests of his breath were taken. These were used in his prosecution for violation of Vehicle Code section 23102, subdivision (a) (drunk driving), and he was found guilty.

Respondent denied that Officer Devine read him the provisions of section 13353. He did concede that he refused to take the tests without his attorney being present and that Officer Devine told him he did not have such a right.

■ On appeal DMV claims it is clear that respondent refused to submit to a test at Officer Devine's request. His response was that he would only submit if his attorney could be present and Vehicle Code section 13353, subdivision (a) allows no such condition or qualification to be placed on the submission to a test.[2] DMV claims that respondent violated the section even though he did agree to take the test approximately an hour and a half later. It relies on *Skinner* v. *Sillas* (1976) 58 Cal.App.3d 591 [130 Cal.Rptr. 91] and *Zidell* v. *Bright* (1968) 264 Cal.App.2d 867 [71 Cal.Rptr. 111].

---

[2]Vehicle Code section 13353, subdivision (a) provides in pertinent part as follows: "Such person shall also be advised by the officer that he does not have the right to have an attorney present before stating whether he will submit to a test, before deciding which test to take, or during administration of the test chosen."

In *Skinner* the driver of a vehicle was booked for violation of section 23102 and was told he would have to take one of the three tests under section 13353. He elected the urine test but at the last minute he refused to take it. He was locked up and the arresting officer left. Approximately four and one-half hours later he agreed to give the urine sample and the test was administered. He pleaded guilty to the 23102 violation. After the DMV received the sworn statement of the arresting officer, it suspended his license. As in this case the superior court issued a writ of mandate ordering DMV to reinstate his driver's license. On appeal from said writ the Court of Appeal reversed stating at pages 598-599: "'It is a matter of common knowledge that the intoxicating effect of alcohol diminishes with the passage of time. [Fn. omitted.] In a matter of a few hours an intoxicated person may "sober up." The efficacy of a blood test depends upon its being made as soon as possible after the time of the offense. To be of any probative value the test must be "near" to the offense in point of time. If it is not taken promptly after the arrest, it proves nothing.' [Citations.] In *Zidell*, the court after examining the language of subdivision (a) of section 13353 stated: 'This language implied that the decision of the arresting officer whether to request a test, and the suspect's response thereto, should not be delayed....' [Citation.]

"Moreover, the section requires that the officer notify DMV by means of a sworn statement if a suspect refuses to submit to any of the enumerated tests. In most cases it will be the arresting officer who will notify the suspect of the implied consent law and it will be the arresting officer who will either give the test or take the suspect to a facility where a test can be administered. Under such circumstances it would be inconsistent with the purposes of the statute to require the officer to sit around and wait until the suspect believes he is ready to take the test."

In *Zidell* the driver of the vehicle was booked and was permitted to call his attorney. After talking to his attorney he refused to submit to any of the tests. The arresting officer then left the station to resume other police duties. Thirty to forty-five minutes later, still during the booking process, the driver stated that he had changed his mind and would submit to one of the tests. The booking officer called the arresting officer who refused to return and no test was given. The decision of DMV to suspend the driver's license was affirmed, with the court observing: "It is provided that 'The test shall be incidental to a lawful arrest *and administered at the direction of a peace officer having reasonable cause to believe such person was driving...while under the*

*influence of intoxicating liquor.'* [Italics added.] (Veh. Code, § 13353, subd. (a).) This language implies that the decision of the arresting officer whether to request a test, and the suspect's response thereto, should not be delayed. This conclusion is also supported by the language of section 13353, subdivision (f): the accused 'may request the arresting officer to have a chemical test made...if so requested, the *arresting officer* shall have the test performed.' (Italics added.) It would be inconsistent with the purpose of the statute to hold that either Officer Ruddick, or the officers on duty at the police station, were required to turn aside from their other responsibilities and arrange for administration of a belated test when once appellant had refused to submit after fair warning of the consequences. [Citations.]" (*Zidell, supra,* 264 Cal.App.2d at p. 870.)

Respondent on appeal argues that he did not refuse to take the tests and that the testimony demonstrates that he was merely confused and wanted advice or the presence of his attorney. He also contends the results of the eventual test played a part in his conviction of drunken driving, therefore, the purpose of the section has been accomplished and he should not receive double punishment.

The superior court in reversing the DMV (by a writ of mandate) disagreed that respondent refused the test. It signed findings of fact, two of which are pertinent to this issue. They are finding 4: "The evidence received does not support finding number (d), to wit: 'You refused to submit to or failed to complete a chemical test of your blood, breath, or urine, after being requested to do so by the officer,"; and finding 5: "Petitioner did in fact submit to and complete *two* chemical tests of his breath."

We can only conclude that the trial court held, as a matter of law, that there can be no violation of section 13353 if a refusal to take one of the tests is later withdrawn and a test is administered. *Skinner, supra,* 58 Cal.App.3d 591, and *Zidell, supra,* 264 Cal.App.2d 867, are clearly to the contrary. In *Zidell* the time lapse after the refusal was only 45 minutes. Here it was at least one and a half hours. Also the test here was not administered at the direction of the arresting officer. Section 13353, subdivision (a) states: "The test shall be...administered at the direction of a peace officer having reasonable cause to believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor." In this case it could only have been the officer or officers that viewed respondent while he was driving. (See

*Skinner* v. *Sillas, supra*, 58 Cal.App.3d 591, 599 and *McConville* v. *Alexis* (1979) 97 Cal.App.3d 593, 602-603 [159 Cal.Rptr. 49].)

■ Respondent's other argument that his conviction for drunk driving should prevent the sanctions of section 13353 is also misplaced. Section 23102, subdivision (a) and section 13353 are independent. While both are aimed at preventing drunk driving, both sections punish the violator for a different illegal activity.

The judgment (order granting a peremptory writ of mandate) is reversed.

Kaus, P. J., and Stephens, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 17, 1980. Bird, C. J., was of the opinion that the petition should be granted.