[Civ. No. 65099. Second Dist., Div. Two. Feb. 14, 1983.]

LESTER COLE, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

COUNSEL

George Deukmejian, John K. Van de Kamp, Attorneys General, and Martin H. Milas, Deputy Attorney General, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

OPINION

**COMPTON, J.**—This is an appeal from a judgment granting a peremptory writ of mandate directing appellant, the Department of Motor Vehicles, to vacate its action suspending respondent Lester Cole's driving privilege for failure to submit to a blood, breath, or urine test as required by Vehicle Code section 13353,[1] the implied consent law. We reverse the judgment.

---

[1]Vehicle Code section 13353 provides in pertinent part: "(a) Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. Such person shall be told that his failure to submit to or complete such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months.

"The person arrested shall have the choice of whether the test shall be of his blood, breath or urine, and he shall be advised by the officer that he has such choice. If the person arrested either is incapable, or states that he is incapable, of completing any chosen test, he shall then have the choice of submitting to and completing any of the remaining tests or test, and he shall be advised by the officer that he has such choice. . . . (b) If any such person refuses the officer's request to

The undisputed facts presented at the departmental hearing concerning respondent's conduct were provided by the testimony of the arresting officer, a member of the California Highway Patrol.

Respondent was lawfully arrested for felony drunk driving at the scene of an injury accident. While at the scene he was given all of the proper admonitions concerning the submission to a chemical test of his blood alcohol level.

Respondent's reply was that he would submit to no test without first consulting an attorney, whereupon the officer advised respondent that such an option was not available and again repeated the law to respondent by reading from a prepared form.[2] Respondent again insisted on talking to an attorney before submitting to any test.

Once in the patrol car, the officer carefully advised respondent that because he had been arrested for felony drunk driving, a blood sample could be extracted even without his consent. The appropriate *Miranda* warnings were given at approximately the same time. In light of respondent's continuing refusal to submit to any test voluntarily, the officer elected to proceed to a hospital.

After arriving at the hospital's emergency room, the officer directed a medical technician to draw the blood sample. Respondent, refusing to roll up his sleeve, warned that he wanted the record to reflect that the test was being administered under duress. The officer and technician then rolled up the sleeve on respondent's shirt and the sample was withdrawn. Throughout these proceedings respondent remained essentially passive and offered no resistance.

At the hearing respondent testified that he had no recollection of telling the officer that he wanted him to know that the blood sample was being taken by force or of refusing to roll up his own sleeve. He claimed, however, that at or

submit to, or fails to complete, a chemical test, the department, upon receipt of the officer's sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor and that the person had refused to submit to, or failed to complete, the test after being requested by the officer, shall suspend his privilege to operate a motor vehicle for a period of six months. . . ."

[2] That statement was: "You are required by State Law to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be of your blood, breath, or urine. If you refuse to submit to a test or fail to complete a test your driving privilege will be suspended for a period of six months. You do not have the right to talk to an attorney or to have an attorney present before stating whether you will submit to a test, before deciding which test to take or during the administration of the test chosen. If you are incapable or state you are incapable of completing the test you choose, you must submit to and complete any of the remaining tests or test. If you refuse to submit to a test, the refusal may be used against you in a court of law."

about the time his arm was being prepared by the medical technician for the extraction he "thought about it and thought that I better take the test." When asked by his counsel why he changed his mind, respondent replied, "because I need my driver's license to work." The record next reflects the following colloquy between the administrative referee and respondent: "REF. HARRISON: Did you ever tell the officer I've changed my mind, its okey. I'll take the test? Or words to that effect? MR. COLE: I did not say that I wouldn't take a test. REF. HARRISON: Now did you ever tell the officer I will take the test? MR. COLE: That I don't recall sir."

Following the hearing, the department determined that respondent had failed to comply with the requirements of Vehicle Code section 13353 and suspended his driver's license for a period of six months. Thereafter respondent sought relief in the superior court by the filing of a petition for writ of administrative mandamus. Without taking any additional evidence, and based solely upon the transcript of the testimony given before the department, the court concluded as a matter of law that respondent had submitted to and completed a chemical test as required by statute.[3]

Since the issue presented is purely one of law, the facts not being in dispute, the test applied by the superior court, i.e., "substantial evidence" or "independent judgment" is immaterial.

■ Our review of the record leads us to conclude that the department was correct in ordering the suspension of respondent's license and that the trial court erred in entering its judgment granting a writ of mandate to set aside that determination.

Vehicle Code section 13353 requires an arresting officer to advise an arrested driver that his failure to submit to a chemical test will result in a six-months suspension of his driving privilege; that he has the choice of a blood, breath, or urine test; that he does not have the right to have an attorney present before stating whether he will submit to a test before deciding which test to take or during administration of the test chosen. The arresting officer more than adequately complied with each of these specific requirements. (Cf. *Lampman* v. *Department of Motor Vehicles* (1972) 28 Cal.App.3d 922 [105 Cal.Rptr. 101].) Despite his admitted understanding of the admonition given, respondent stubbornly refused to submit to any test unless he could communicate first with his attorney. This "conditional acceptance" is tantamount to a refusal as a matter of law. (*McDonnell* v. *Department of Motor Vehicles* (1975) 45 Cal.App.3d

[3]As a portion of its findings of fact the trial court found that although respondent "had initially refused to consent to said test as requested by the arresting officer," he subsequently "did change his mind and consent to the blood test and completed said blood test."

653 [119 Cal.Rptr. 804]; *Maxsted* v. *Department of Motor Vehicles* (1971) 14 Cal.App.3d 982 [92 Cal.Rptr. 579].)

To respondent's credit, he did not have to be subdued and offered no physical resistance to the drawing of blood at the hospital. His refusal, however, to even so much as roll up his own sleeve, requiring that the arresting officer and the attendant medical technician do so, indicates that up until the time the hypodermic needle was inserted into his arm, he in no way manifested any retraction of his previous refusal to submit to any test. Respondent's statements, as well as his actions, can only be interpreted as constituting a refusal under the statute. (Cf. *Maxsted* v. *Department of Motor Vehicles, supra*; *McGue* v. *Sillas* (1978) 82 Cal.App.2d 799 [147 Cal.Rptr. 354]; *Buchanan* v. *Department of Motor Vehicles* (1979) 100 Cal.App.3d 293 [160 Cal.Rptr. 557].)[4]

Respondent contends,[5] however, that immediately before the blood was drawn he changed his mind and consented to the test. This argument has been unanimously rejected by the appellate courts of this state. "The determining factor is not the state of the suspect driver's mind, it is the fair meaning to be given his response to the demand that he submit to the chemical test." (*Maxsted* v. *Department of Motor Vehicles, supra*, at p. 986; *Cahall* v. *Department of Motor Vehicles* (1971) 16 Cal.App.3d 491 [94 Cal.Rptr. 182]; *Buchanan* v. *Department of Motor Vehicles, supra*, at p. 299.) Under the circumstances, the *only* fair meaning that can be drawn from respondent's conduct is that he refused to submit to any chemical test.

Respondent goes on to argue that even though he may have been reluctant to comply with the officer's request, there was no refusal because he did in fact "complete" the test administered. He reasons that section 13353 is written in the disjunctive and requires an arrestee either to "submit to" or "complete" any one of three tests. Since a reviewing court must interpret legislation reasonably and give effect to the apparent legislative purpose of a statute, we must reject respondent's contention.

---

[4]To require a showing of physical force perpetrated by the arresting officer against the arrestee or vice versa before characterizing the conduct in the instant case as a refusal would be not only foolhardy but inconsistent with the purposes of Vehicle Code section 13353 as well. The statute in question specifically seeks to obviate incidents of violence that might be expected when a recalcitrant inebriate is subjected to a chemical test by force (*People* v. *Superior Court* (1972) 6 Cal.3d 757, 764-765 [100 Cal.Rptr. 281, 493 P.2d 1145]; *Covington* v. *Department of Motor Vehicles* (1980) 102 Cal.App.3d 54, 57-58 [162 Cal.Rptr. 150]) or, as succinctly put by this court in *Lampman* v. *Department of Motor Vehicles, supra,* at page 927, to "substitute volition for compulsion."

[5]Although respondent has filed no brief in this court, a reading of both the petition for extraordinary relief, its accompanying points and authorities, and the transcript of the administrative proceedings makes his position clear.

It has long been settled that compliance with the implied consent law consists of completing, not merely attempting one of the three blood alcohol tests offered. (*Skinner* v. *Sillas* (1976) 58 Cal.App.3d 591, 598 [130 Cal.Rptr. 91].) "Public policy dictates that the suspected drunken driver not be allowed to evade giving the best evidence of his offense by the pretext of partial compliance. (*Cahall* v. *Department of Motor Vehicles* (1971) 16 Cal.App.3d 491, 496. . . .)" (*Miles* v. *Alexis* (1981) 118 Cal.App.3d 555, 559 [173 Cal.Rptr. 473].)

Inherent in the objective of obtaining the "best" evidence of an individual's blood alcohol level is the need that the test be completed in a timely fashion. The individual may not, when asked, refuse the test and then at his leisure later "complete" a test in his own time.

In light of the above cited authority and the entire statutory scheme, it is clear that the word "complete" is subject to only one reasonable interpretation. Once an arrestee has voluntarily submitted to a chemical test, he must complete the test (or choose one that he is able to complete) or face the very strong possibility that his conduct will be construed as a refusal. In the case under review, there was no voluntary submission on the part of respondent to any of the blood alcohol tests offered by the arresting officer. The fact that a blood sample ultimately was obtained and the test completed is of no significance. Accordingly, there was no compliance with the provisions of section 13353. The evidence unequivocally supports the department's finding that respondent refused to submit to a test of his blood, breath or urine when requested to do so by the officer.

The judgment is reversed. The matter is remanded to the trial court with directions to enter a new and different judgment denying the petition for mandate.

Roth, P. J., and Beach, J., concurred.