[Civ. No. 22733. Third Dist. Sept. 26, 1983.]

RONALD HARRY MORGAN, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

COUNSEL

John W. Ewing for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Geoffrey L. Graybill and Faith Geoghehan, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**SIMS, J.**—Plaintiff (hereafter referred to as petitioner) appeals from a judgment denying his petition for a writ of mandate in which he sought to

compel the Department of Motor Vehicles to vacate its order suspending his driving privilege for refusal to submit to a chemical test pursuant to Vehicle Code section 13353,[1] the "implied consent law." We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 1, 1982, petitioner was lawfully arrested for driving under the influence of an intoxicating beverage. (§ 23152, subd. (a).) The arresting officer advised petitioner that he was required to submit to a blood alcohol analysis (§ 13353), and that he had a choice of a blood, breath or urine test. The officer further advised petitioner, "If you refuse to submit to a test or fail to complete a test, your driving privilege will be suspended for a period of six months." Petitioner replied, "I don't want to take any fucking test." During the entire episode after his arrest, petitioner was very angry and verbally abusive. However, the officer advised petitioner that petitioner could change his mind at any time and submit to a test.

Instead of proceeding directly to the county jail for booking, the arresting officer escorted petitioner to a local hospital where a blood sample could be extracted and used as evidence in a subsequent criminal prosecution for petitioner's violation of section 23152, subdivision (a). The taking of the blood test at the hospital is described by petitioner himself as follows:

"MR. EWING [counsel for petitioner]: Did you ask the Officer to submit to one of the other chemical tests?

"MR. MORGAN [petitioner]: I didn't ask him. I said I will take a breath test or a urine test, but I said I did not want to take a blood test.

"MR. EWING: What did the Officer say to that?

"MR. MORGAN: I think he said 'You're going to take'—now this was at the hospital. There was also two nurses at the hospital that I said 'I'll take a breath test. I'll take a urine test. I do not want to take the blood test.' And I mentioned to the nurses at that time that 'You're my witnesses. I am not refusing to take a test. I'm refusing to take the blood test.'

"MR. EWING: Did the—

"MR. MORGAN: I didn't want to take the blood test.

"MR. EWING: Okay. Did the Officer tell you that you were going to take the blood test?

---

[1]All statutory references are to the Vehicle Code.

"Mr. Morgan: Yes, he did.

"Mr. Ewing: Okay. And was the blood test taken?

"Mr. Morgan: Yes, it was.

"Mr. Ewing: In a medically approved manner? Did the nurse withdraw the blood?

"Mr. Morgan: I'm not exactly sure who took because I had turned my head. The Officer had made it very plain that whether I liked it or not I was going to take the test.

"Mr. Ewing: Did you fight the nurse or whoever took the test?

"Mr. Morgan: No, not when the test was going to be given I did not fight them because there was no reason to fight them because if they're going to take, they're going to take it. The Officer Elliott had mentioned to two other police officers at the hospital that he might need some help or something and I—if I remember right, I made a crack about 'This is ridiculous. I am five foot six, weigh 150 pounds, why would I fight you guys.' With the injuries I've had, it would be sheer stupidity to fight anybody. If they're going to take a test, they're going to take a test."

The arresting officer subsequently testified that petitioner *never* offered to take *any* test—blood, breath, or urine. The nurses alluded to in petitioner's testimony were not called as witnesses at the hearing.

On May 17, 1982, petitioner was informed his driver's license was to be suspended due to his failure upon arrest to submit to a blood alcohol test. Petitioner requested a formal hearing, which was held July 21, 1982. Following completion of the hearing, the suspension was upheld.

DISCUSSION

I

■ Petitioner first asserts he was improperly advised of the legal consequences of failure to submit to or complete a chemical test. Petitioner refers to the transcript of the formal hearing wherein the arresting officer testified at one point in conclusionary terms that he told petitioner his driver's license "could" be suspended if he refused to submit to a chemical test. Petitioner cites *Decker* v. *Department of Motor Vehicles* (1972) 6 Cal.3d 903 [101 Cal.Rptr. 387, 495 P.2d 1307], for the proposition that an

arresting officer's use of the words "could be suspended" in a license suspension admonition does not give sufficient warning of the legal consequences of refusal to submit to or complete a chemical test and therefore cannot be used as a basis for suspension. (*Id.*, at pp. 905-907.)

We agree with *Decker* that section 13353 explicitly requires one arrested for driving under the influence of alcohol be told his failure to submit to a chemical test *will* result in suspension of his driver's license. At the same time it is the duty of this court to review all of the evidence presented at the administrative hearing, and not just the evidence petitioner elects to quote out of context. Our review of the entire transcript manifests petitioner was told by the arresting officer that failure to submit to or complete a chemical test *would* result in a suspension of his driver's license. Thus, the arresting officer twice informed petitioner at the scene of the arrest: "If you refuse to submit to a test or fail to complete a test, your driving privilege *will* be suspended for a period of six months." (Italics added.)[2] If the foregoing were not enough, petitioner testified he was told by the arresting officer he *would* lose his driver's license if he did not submit to a chemical test.[3]

Our review of the record manifests beyond any doubt petitioner was informed and aware of the fact that refusal to submit to a chemical examination would result in a suspension of his driver's license. Petitioner's assertion to the contrary must be rejected.

## II

█ Petitioner next argues he never refused to take a chemical test. A brief explanation is required.

Following petitioner's arrest, the arresting officer informed petitioner that he was required to submit to a chemical test, either blood, urine or breath,

---

[2]In giving this admonition, the arresting officer twice read the following warning to petitioner: "You are required by state law to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be of your blood, breath or urine. If you refuse to submit to a test or fail to complete a test, your driving privilege will be suspended for a period of six months. You do not have the right to talk to an attorney or to have an attorney present before stating whether you will submit to a test, before deciding which test to take, or during the administration of the test chosen. If you are incapable, or state you are incapable, of completing the test you choose, you must submit to and complete any of the remaining tests or test. If you refuse to submit to a test, the refusal may be used against you in a court of law."

[3]"MR. EWING [counsel for petitioner]: Did he [Officer Elliot] tell you that if you did not submit to a chemical test you'd lose your drivers [*sic*] license?

"MR. MORGAN [petitioner]: Yeah, I think he did, but I said that I didn't want a blood test."

and then asked petitioner which test he wanted to take. Petitioner's response was that he did not "want to take any fucking test." Petitioner now argues his response was a reply only to whether he *wanted* to take a test, but not whether he would have been *willing* to take a test if he had been so asked. Petitioner argues that had he been asked by the arresting officer "will you" or "which test will you take" and then answered as he did, his answer would constitute a refusal. He asserts, however, there cannot be a refusal until there is an unambiguous request that the accused take a test, and that an officer's question "would you like to take a test" or "which test do you want to take" to which a negative answer is supplied does not constitute a refusal. We disagree.

The law enforcement officers of this state have more important things to do than to engage in semantic gamesmanship with those arrested for driving under the influence of alcohol. Petitioner was clearly and unequivocally informed that he was required by law to submit to a chemical test or lose his driver's license, and was asked which test he wanted to take. Plaintiff's response was equally clear and unequivocal; he did not want to take any test. "The determining factor is not the state of the suspect driver's mind, it is the fair meaning to be given his response to the demand that he submit to the chemical test." (*Maxsted* v. *Department of Motor Vehicles* (1971) 14 Cal.App.3d 982, 986 [92 Cal.Rptr. 579].) Petitioner was informed of the law and provided an opportunity to comply; he refused, and such refusal constitutes a valid basis for suspension of his driver's license.

### III

■ Finally, plaintiff asserts that because a blood test was taken at the hospital, there is no basis for the finding that he refused to submit to a chemical examination. Petitioner contends that the officer told him he could consent to a test at any time and that he did so at the hospital when he allowed blood to be taken. This argument is unavailing. A defendant may not verbally refuse to take a test required by section 13353 and avoid the license suspension mandated by the statute by later agreeing to take a specified test. (*Covington* v. *Department of Motor Vehicles* (1980) 102 Cal.App.3d 54, 59 [162 Cal.Rptr. 150]; *Skinner* v. *Sillas* (1976) 58 Cal.App.3d 591, 598-599 [130 Cal.Rptr. 91]; *Zidell* v. *Bright* (1968) 264 Cal.App.2d 867, 870 [71 Cal.Rptr. 111]; see *Buchanan* v. *Department of Motor Vehicles* (1979) 100 Cal.App.3d 293, 298 [160 Cal.Rptr. 557].) "[O]nce the suspect refuses to take one of the three tests, blood, urine, or breath, there is no requirement that the officers thereafter give him a test when he decides he is ready. [Citation.]" (*Skinner* v. *Sillas, supra,* 58 Cal.App.3d at p. 598.) In the instant case, the arresting officer gave petitioner incorrect advice when the officer told petitioner he could consent to

the taking of a test after having initially refused a test. However, we need not consider the effect of the officer's incorrect advice on the instant case, because it is clear petitioner *never* consented to a test. Petitioner's own testimony indicates he never voluntarily submitted to a blood test but rather allowed blood to be taken because "it would be sheer stupidity to fight anybody. If they're going to take a test, they're going to take a test."

*Cole* v. *Department of Motor Vehicles* (1983) 139 Cal.App.3d 870 [189 Cal.Rptr. 249], controls here. There, the respondent informed the arresting officer he would not submit to a chemical test without first consulting an attorney, notwithstanding the officer's advisement that such an option was not available. Thereafter, respondent was transported to a local hospital where a blood sample was taken from respondent to be used as evidence in a subsequent criminal prosecution. On appeal, respondent argued that while he may have been reluctant to comply with the officer's request to submit to chemical examination, there was no refusal because he did in fact "complete" the test administered. The *Cole* court disagreed, holding there was no evidence in the record of any voluntary submission on respondent's part to any of the blood alcohol tests offered by the arresting officer. "To require a showing of physical force perpetrated by the arresting officer against the arrestee or vice versa before characterizing the conduct in the instant case as a refusal would be not only foolhardy but inconsistent with the purposes of Vehicle Code section 13353 as well." (*Id.,* at p. 874, fn. 4.) "The fact that a blood sample ultimately was obtained and the test completed is of no significance." (*Id.,* at p. 875.) We agree with this appraisal. Here, as in *Cole,* the only fair meaning that can be drawn from petitioner's conduct is that he refused to submit to a chemical test.

The judgment is affirmed.

Puglia, P. J., and Sparks, J., concurred.