[Civ. No. 67354. Second Dist., Div. One. Feb. 17, 1984.]

CAROLINA WINSTON BARRIE, Plaintiff and Respondent, v. DORIS ALEXIS, as Director, etc., et al., Defendants and Appellants.

COUNSEL

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Henry G. Ullerich and Christopher C. Foley, Deputy Attorneys General, for Defendants and Appellants.

Steven M. Sindell for Plaintiff and Respondent.

OPINION

LILLIE, J.—The Department of Motor Vehicles appeals from judgment granting peremptory writ of mandate directing it to vacate its order suspending the driving privileges of Carolina Winston Barrie for six months for her refusal to submit to a chemical test pursuant to the implied consent law. (§ 13353, Veh. Code.)

The facts presented by the officers at the administrative hearing concerning Barrie's conduct are undisputed; Barrie neither testified nor offered evidence on her behalf. An accident between a motorcycle and motor vehicle occurred on Pacific Coast Highway at 10:40 p.m.; the motorcyclist was removed to the hospital; Barrie, driver of the motor vehicle, was slouched on a sofa drinking coffee in a nearby residence. Asked by Officers Brucker and Donnelly to go outside to perform a balance and coordination test, Barrie walked out staggering and the odor of alcohol emitted from her breath and person; after administering three field sobriety tests, the officers concluded she was under the influence of alcohol and arrested her.

En route to the jail Officer Brucker admonished Barrie "You are required by state law to take a chemical test to determine the alcohol content of your blood. You have the choice of taking a breath test, a urine test, or a blood test. Which test would you prefer to take?" Barrie told Officer Brucker she would let her know when they got to the station.

At the jail Officer Brucker again admonished Barrie, and Barrie responded she would not take any test. Then Officer Donnelly on two separate occasions according to law read the following statement verbatim from a card: "You are required by state law to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be of your blood, breath or urine. If you refuse to submit to a test or fail to complete a test, your driving privilege will be suspended for a period of six months. You do not have the right to talk to an attorney or to have an attorney present before stating whether you will submit to a test, before deciding which test to take, or during the administration of the test chosen. If you are incapable, or state you are incapable, of completing the test you choose, you must submit to and complete any of the remaining tests or test." Each time, Barrie responded "No," she was not going to take any test.

At this point the officers conferred with the watch commander who said, "you will take her to the hospital and you will get blood drawn from her because it's a felony driving under the influence." Thereupon she was handcuffed to a gurney and transported to the hospital where a blood sample was taken resulting in a blood alcohol reading of .25 percent. Barrie said she wanted it noted she was taking the test under protest, and that she did not want to take it.

On the foregoing undisputed evidence, the Department of Motor Vehicles suspended Barrie's driving privilege for six months under the implied consent law. Barrie petitioned for writ of mandate alleging, among other things, that there was no refusal to submit to the blood test. The trial court granted the petition and expressly found that Barrie was lawfully arrested for driving a motor vehicle while intoxicated and caused bodily harm; the arresting officer read to her the statement according to law; she did not refuse to submit to and complete a chemical test of her blood; and she voluntarily submitted to and completed a chemical test of her blood administered at the hospital. It concluded: "The administrative record evidences Ms. Barrie's submission to and completion of a chemical test in compliance with Vehicle Code section 13353," and that her driving privilege was improperly suspended.

No additional evidence was taken at the hearing on the petition; the court's findings and conclusions are based solely upon the transcript of the testimony taken at the departmental hearing. The facts are not in dispute. Thus although the trial court did not indicate which test it used in its review of the departmental proceedings, it is immaterial whether or not the administrative record received an "'independent judgment review.'" (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 398

[188 Cal.Rptr. 891, 657 P.2d 383].) ■ The standard for this court is whether the record contains substantial evidence to support the trial court's findings. (*Brush* v. *City of Los Angeles* (1975) 45 Cal.App.3d 120, 123 [119 Cal.Rptr. 366]; see also *Buchanan* v. *Department of Motor Vehicles* (1979) 100 Cal.App.3d 293, 298-299 [160 Cal.Rptr. 557].) ■ Our review of the record leads us to the conclusion that the department was correct in ordering suspension of Barrie's license and that the administrative record does not support the judgment granting writ of mandate to set aside that determination.

First, the arresting officer complied with the specific requirements of section 13353, Vehicle Code. While it is true that the first admonitions by Officer Brucker were of an informal nature, the evidence is undisputed that within minutes thereafter Officer Donnelly on two occasions read the admonition verbatim from a card. There is no doubt Barrie was informed and aware that refusal to submit to a chemical test would result in a suspension of her driver's license. (*Morgan* v. *Department of Motor Vehicles* (1983) 148 Cal.App.3d 165, 169 [195 Cal.Rptr. 707].) The trial court found, and properly so, that the arresting officer read to the driver the statement according to law. This answers Barrie's argument that she was not properly advised.

Second, to each of the statements read to her by Officer Donnelly, Barrie responded "No," she was not going to take any test. This is an outright refusal as a matter of law under section 13353 with no room for construction. Barrie's response was clear and unequivocal. Such refusal constitutes a valid basis for suspension of her driver's license. (*Morgan* v. *Department of Motor Vehicles, supra,* 148 Cal.App.3d 165, 170.)

Third, Barrie continued her refusal and to object to the blood test although she offered no physical resistance thereto. Immediately upon her last refusal Barrie was transported to the hospital handcuffed to a gurney and a blood sample was taken. At no time did Barrie in any manner manifest a retraction of her previous refusals to submit to any test in fact, at the time the blood sample was taken she told Officer Donnelly that she wanted it noted that she was taking the test under protest and that she did not want to take it. It is readily apparent from the foregoing that again she made her refusal clear at the time the test was being administered. Although the determining factor is not the state of mind of the arrested driver but the fair meaning to be given his response to the demand he submit to a chemical test (*Cole* v. *Department of Motor Vehicles* (1983) 139 Cal.App.3d 870, 874-875 [189 Cal.Rptr. 249]; *Buchanan* v. *Department of Motor Vehicles* (1979) 100

Cal.App.3d 293, 299 [160 Cal.Rptr. 557]; *Cahall* v. *Department of Motor Vehicles* (1971) 16 Cal.App.3d 491, 497 [94 Cal.Rptr. 182]; *Maxsted* v. *Department of Motor Vehicles* (1971) 14 Cal.App.3d 982, 986 [92 Cal.Rptr. 579]), Barrie's statements to Officer Donnelly can only be interpreted as constituting a direct refusal to submit to any chemical test under the statute. There is no room for construction of the word "No"; it can only mean refusal. (*Maxsted* v. *Department of Motor Vehicles* (1971) 14 Cal.App.3d 982, 986 [92 Cal.Rptr. 579].)

Barrie relies heavily on the fact that she did not refuse to go to the hospital and offered no physical resistance to the drawing of blood. A similar contention was made and rejected in *Cole* v. *Department of Motor Vehicles, supra,* 139 Cal.App.3d 870. Said the court "To require a showing of physical force perpetrated by the arresting officer against the arrestee or vice versa before characterizing the conduct in the instant case as a refusal would be not only foolhardy but inconsistent with the purposes of Vehicle Code section 13353 as well. The statute in question specifically seeks to obviate incidents of violence that might be expected when a recalcitrant inebriate is subjected to a chemical test by force (*People* v. *Superior Court* (1972) 6 Cal.3d 757, 764-765 [100 Cal.Rptr. 281, 493 P.2d 1145]; *Covington* v. *Department of Motor Vehicles* (1980) 102 Cal.App.3d 54, 57-58 [162 Cal.Rptr. 150]) or, as succinctly put by this court in *Lampman* v. *Department of Motor Vehicles, supra,* at page 927, to 'substitute volition for compulsion.'" (P. 874, fn. 4.) The argument of Barrie that "Had the officers resorted to physical force in an effort to get Barrie to submit to a test, then a much stronger argument could have been made with regard to this issue" is not only specious but contravenes the aim of Vehicle Code section 13353 "to equip peace officers with an instrument of enforcement not involving physical compulsion." (*People* v. *Superior Court* (1972) 6 Cal.3d 757, 765 [100 Cal.Rptr. 281, 493 P.2d 1145].)

Fourth, "[t]he fact that a blood sample ultimately was obtained and the test completed is of no significance." (*Cole* v. *Department of Motor Vehicles, supra,* 139 Cal.App.3d 870, 875.) Barrie's argument to the contrary was rejected in *Morgan* v. *Department of Motor Vehicles, supra,* 148 Cal.App.3d 165, 170 and *Cole* v. *Department of Motor Vehicles, supra,* 139 Cal.App.3d 870, 875. It is the initial refusal which forms the basis for suspension of the driver's license under section 13353. (*Plumb* v. *Department of Motor Vehicles* (1969) 1 Cal.App.3d 256, 262 [81 Cal.Rptr. 639].) The argument that finally a blood sample was taken fails to meet the requirements of section 13353. (*Bush* v. *Bright* (1968) 264 Cal.App.2d 788, 793 [71 Cal.Rptr. 123].) ■ The statute has two objectives—to secure chemical tests and to provide an administrative penalty for those drivers

who refuse to take the test. (*People* v. *Fite* (1968) 267 Cal.App.2d 685, 691 [73 Cal.Rptr. 666].)

■ Fifth, the time involved is not here significant. Barrie argues that the delay caused by her refusal is minimal (10 minutes) and did not jeopardize the efficacy of the blood test since the results were good thus there was no refusal under *Covington* v. *Department of Motor Vehicles* (1980) 102 Cal.App.3d 54 [162 Cal.Rptr. 150] and *Skinner* v. *Sillas* (1976) 58 Cal.App.3d 591 [130 Cal.Rptr. 91]. This begs the question because in the instant case it is the refusal not the delay that is the significant factor. ■ Further, after the arrested driver refuses to take one of the three tests, it is no longer required that he be given one even though he may decide he is ready to take it. (*Skinner* v. *Sillas, supra,* 58 Cal.App.3d 591, 598; *Zidell* v. *Bright* (1968) 264 Cal.App.2d 867, 870 [71 Cal.Rptr. 111]). Even were we able to construe the record as supporting a subsequent voluntary submission to the blood test, Barrie may not refuse to take a test required by section 13353 and avoid the license suspension mandated by the statute by later agreeing to take a specified test or allowing blood to be taken (*Morgan* v. *Department of Motor Vehicles, supra,* 148 Cal.App.3d 165, 170, and cases cited therein). However, law enforcement officers may compel him to submit to a blood test and the government may utilize the results of chemical analysis performed thereon provided that the removal of the blood is done in a reasonable, medically approved manner, is incident to defendant's arrest and is based upon the reasonable belief that the person is intoxicated. (*People* v. *Ryan* (1981) 116 Cal.App.3d 168, 182 [171 Cal.Rptr. 854]; *People* v. *Puccinelli* (1976) 63 Cal.App.3d 742, 746 [135 Cal.Rptr. 534].)

■ Barrie was properly informed of the law relating to suspension of her driver's license. She was provided an opportunity to comply. Here, as in *Morgan* v. *Department of Motor Vehicles, supra,* 148 Cal.App.3d 165, 171 and *Cole* v. *Department of Motor Vehicles, supra,* 139 Cal.App.3d 870, 875, the only fair and reasonable meaning that can be drawn from Barrie's responses is that she refused to submit to any one of the three tests. Such refusal constitutes a valid basis for suspension of her driver's license. Viewing the record in the light of the authorities hereinabove cited, it is obvious to us that there is no evidence to support the trial court's judgment. The evidence taken at the administrative hearing on which the trial court's findings were based does not support a finding that Barrie did not refuse to submit to and complete a chemical test of her blood or that she voluntarily submitted to and completed a blood test.

In shotgun fashion Barrie raises various points, none with merit. She says the administrative hearing was protracted and the underlying criminal charges were still pending against her, thus the departmental hearing was

conducted in such a manner "as to offend one's concept of fairness." Barrie requested and was granted a hearing and she was given a fair hearing. There was no deprivation of due process of law.

The judgment is reversed. The cause is remanded to the superior court with directions to enter a new and different judgment and to deny the petition for mandate.

Spencer, P. J., and Hanson (Thaxton), J., concurred.