[Civ. No. 56049. Second Dist., Div. Five. Nov. 15, 1979.]

RODERICK LYLE REED, JR., Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

COUNSEL

George Deukmejian, Attorney General, and Richard M. Radosh, Deputy Attorney General, for Defendant and Appellant.

Dirosario & Kallan and Neal Kallan for Plaintiff and Respondent.

OPINION

HASTINGS, J.—The Department of Motor Vehicles (DMV) appeals from a judgment granting a writ of mandate in ordering DMV to reverse its decision suspending Roderick Lyle Reed, Jr.'s (Reed) driving privilege under Vehicle Code section 13353, subdivision (b). The section provides that if a person refuses an officer's request to submit to, or *fails to complete, a chemical test*, DMV, upon receipt of the officer's sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle under the influence of intoxicating liquor, shall suspend his privilege to operate a motor vehicle for a period of six months.

Officer Eaton arrested Reed and asked him if he would take a blood test. Reed said he wanted to take a blood test and he was taken to Pa-

cific Hospital for that purpose. At the hospital Reed read a hospital form and stated that he was unable to take a blood test because he had hemophilia.

He was then taken to the Long Beach Police Department and on the way to the station Officer Eaton read the implied consent admonition to him from the arrest investigation report.[1] Reed stated that he would take the breath test. As the test started he was informed that he had to continually blow into the machine until the bag was blown up and the whistle sounded. Reed blew the bag full but did not blow enough air to sound the whistle and was told that this attempt was not adequate. He tried two or three more times but on each occasion was able to fill the bag only two-thirds full and the whistle did not sound. He then explained that he had emphysema and was incapable of completing the breath test.

He was then asked to take the urine test and he agreed. He gave the first or voiding sample of the urine test. About 25 to 30 minutes later, he was asked to provide the second sample in order to complete the test but he was unable to comply. He was given about five minutes to produce the sample which he was unable to do and he was then taken back to the booking area. He was advised that he would lose his driving privilege if he did not take the test and Reed answered that that would depend upon the department hearing officer.

Reed filed a section 1538.5 motion to exclude evidence of the chemical tests that he had submitted to so that the DMV could not have two inconsistent theories, both determined in its favor, i.e., that the results of the chemical tests were admissible and that Reed refused to submit to a chemical test. The court stated that it would not treat the case as a refusal case and respondent then entered a plea of nolo contendere to violating Vehicle Code section 23102, subdivision (a). The trial judge entered on the docket sheet that the court refused to treat the case as a refusal case.

---

[1]The statement read was: "You are required by state law to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be of your blood, breath, or urine. If you refuse to submit to a test or fail to complete a test your driving privilege will be suspended for a period of six months. You do not have the right to talk to an attorney or to have an attorney present before stating whether you will submit to a test, before deciding which test to take, or during the administration of the test chosen."

After the DMV received the sworn statement of Officer John Eaton pursuant to section 13353, subdivision (b), *supra*, DMV issued an order of suspension to Reed. A formal hearing was held and Reed introduced into evidence copies of the docket sheets from his drunk driving prosecution in the Long Beach Municipal Court purporting to establish that he had refused to submit to and complete a chemical test. The final decision of DMV after the hearing was that the suspension was proper and required.

Reed filed his petition for writ of mandate in the superior court and the parties filed their points and authorities both for and in opposition to the petition. The trial court concluded that DMV was collaterally estopped from finding that Reed refused a chemical test and issued the writ of mandate. This appeal followed and the sole issue is whether the trial court erroneously applied the doctrine of collateral estoppel.

## I

■ DMV argues that the doctrine of collateral estoppel should not have been applied against it because the issue of refusal was not identical or actually litigated in a municipal court action and also on the theory that DMV is not in privity with the People in a prosecution pursuant to section 23102, subdivision (a).

At the section 1538.5 hearing, the court ruled that the one urine sample tested was admissible. The trial judge then entered on the docket sheets that the Penal Code section 1538.5 motion was denied and that the court declined to treat the case as a refusal case. Based on this record DMV maintains that there was no identity of issue because the section 1538.5 motion was a nullity and the court's "refusal" comment, *if* a finding, was unnecessary to the judgment of conviction. The section 1538.5 motion DMV contends was not related to any issue of search and seizure and was merely a pretext to record the trial judge's favorable comment on the issue of refusal.

In *People* v. *Rawlings* (1974) 42 Cal.App.3d 952 [117 Cal.Rptr. 651], a municipal court, after a section 1538.5 hearing, entered an order suppressing breath test results because the test was not administered in exact compliance with the provisions of California Administrative Code, title 17, section 1221.4. The court on page 956 stated: "The so-called 'order of suppression' was not within the purview of Penal

Code section 1538.5 which provides for pretrial suppression hearings dealing with the issue of search and seizure. Here there was no issue of search and seizure involved. The issue was not whether the officers could constitutionally administer the test but only the mechanical circumstances of its administration. Penal Code section 1538.5 does not provide an omnibus procedure for the pretrial determination of rulings on evidentiary questions generally. [Citations.] Nor was the order pursuant to any other established procedure providing for pretrial determination of questions of the admissibility of evidence.

"In short, the motion and the order resulted in nothing more than an informal indication of how the judge would later rule on the question. The order was not binding on the judge or the parties. [Citation.]

"The defendant had no right to unilaterally seek a pretrial ruling on such a purely evidentiary question and the city attorney was not obliged to participate. Nor was the defendant in any position to move for a dismissal of the action based upon the pretrial ruling. [Citations.] Absent an agreement by both parties to conduct such hearing pretrial, the court even on its own motion could not have ruled on the matter and dismissed the action. [Citation.]."

Our present case does not concern a search and seizure issue but an evidentiary issue. The municipal court case was a section 23102 prosecution which would require a ruling by the court on the admissibility of the one urine sample. There is some merit to the People's argument that Reed probably used the section 1538.5 hearing hoping that he would get the ruling that it was not a refusal case. When he received the ruling he wished his chance of losing his driver's license was greatly diminished and he pleaded guilty to the section 23102 offense. In all probability, if he had gone to trial without the section 1538.5 motion the issue of refusal would not have been raised as it was unnecessary to the prosecution's case. The trial court should have dismissed the section 1538.5 motion. DMV would then have been able to proceed with the section 13353, subdivision (b) hearing without being confronted with the collateral estoppel problem. The trial court, however, did erroneously conduct the section 1538.5 hearing so the issue of collateral estoppel must be addressed. In *Rawlings, supra*, 42 Cal.App.3d 952, the court said the motion and order resulted in nothing more than an informal indication of how the judge would later rule on the question and it was not binding on the judge or the parties. In *Skinner v. Sillas* (1976) 58

Cal.App.3d 591, 596-597 [130 Cal.Rptr. 91], the court stated: "'The criterion to use in determining whether a finding creates collateral estoppel is: Was the finding necessary to the judgment? If it was unnecessary, there is no collateral estoppel....' [Citations.]"

It is true that the doctrine of collateral estoppel is based upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy. However, we do not believe the doctrine encompasses an informal evidentiary ruling, not binding on the judge or parties (*Rawlings, supra,* 42 Cal.App.3d 952) and one that is also unnecessary to the judgment (*Skinner, supra,* 58 Cal.App.3d 591). Reed's counsel can't be faulted for a nice try, however the court should have recognized the inappropriateness of the section 1538.5 motion and dismissed it. The issue before us would never have materialized.

The judgment granting the writ of mandate is reversed and the matter remanded for further proceedings.[2]

Kaus, P. J., and Stephens, J., concurred.

---

[2]We are not, by this opinion, inferring Reed refused or did not refuse to take the test. This issue must be decided by the court on remand.