[No. D006582. Fourth Dist., Div. One. Nov. 15, 1988.]

BELA JEANRENE BETYAR, Plaintiff and Respondent, v.
A. A. PIERCE, as Director, etc., Defendant and Appellant.

1252

COUNSEL

John K. Van de Kamp, Attorney General, and Melvin R. Segal, Deputy Attorney General, for Defendant and Appellant.

Richard L. Wehmeyer for Plaintiff and Respondent.

OPINION

WIENER, Acting P. J.—Defendant Department of Motor Vehicles (DMV) revoked plaintiff Bela Betyar's driver's license for two years under the implied consent law (Veh. Code, § 13353)[1] because of his refusal or failure to complete a blood-alcohol test when requested to do so by a peace officer. Betyar successfully petitioned the superior court for a peremptory writ of mandate directing the DMV to vacate its revocation. This appeal ensued.

The principal issue is whether a factual finding in the underlying criminal proceeding that Betyar "did take and complete a chemical test" following his drunk driving arrest collaterally estopped the DMV from later revoking his license. We conclude collateral estoppel does not apply where, as here, the parties' factual stipulation concerning the blood alcohol tests was not necessary to the judgment of conviction following Betyar's negotiated plea of guilty to driving under the influence of alcohol. Accordingly, we reverse the judgment and direct the court to vacate its judgment granting the peremptory writ of mandate and awarding Betyar attorney's fees and costs.

---

[1] All statutory references are to the Vehicle Code unless otherwise specified.

## FACTUAL AND PROCEDURAL BACKGROUND

Betyar was arrested by Highway Patrol Officer Mark Nickelson for driving under the influence on July 14, 1986. Nickelson advised Betyar of the requirements of the implied consent law, including the fact his license would be revoked for two years if he had a similar conviction within the last five years. Betyar agreed to submit to a urine test. Unable to provide a second urine sample within the required test period, Betyar next agreed to take a breath test.

Officer Nickelson explained the procedures for administration of the breath test and that the samples had to be within .02 percent of each other. Betyar blew into the breath analyzer but failed to keep the yellow light on continuously, as required for a good sample. Nickelson testified he recorded three samples with readings of .26, .23 and .20 percent. Betyar said he gave four breath samples for which readings of .29, .26, .23 and .20 percent were obtained. Because the samples were not within the spread required by law, Nickelson asked Betyar to give a fifth sample. Betyar refused. Officer Nickelson again advised Betyar of the requirements of the implied consent law, but Betyar continued to refuse to blow into the breath analyzer and refused to take a blood test. He was not offered another opportunity to complete the urine test.

Betyar was charged with driving while under the influence in violation of section 23152, subdivisions (a) and (b). The charge was enhanced by an allegation he refused to submit to or complete a blood-alcohol test pursuant to sections 23157 and 23159.

Betyar pleaded guilty to driving under the influence. As part of the negotiated plea the district attorney and defense counsel stipulated that the court make "a factual finding under a motion brought pursuant to PC 1538.5 that the defendant did take and complete a chemical test." The court then dismissed the enhancement allegation. The court granted Betyar probation.

Officer Nickelson submitted an "officer's statement" to the DMV pursuant to section 13353 and both he and Betyar testified at the subsequent formal hearing regarding license revocation. The DMV rejected Betyar's argument that it was collaterally estopped from making an adverse finding regarding his refusal to take a chemical test and revoked Betyar's license for two years.[2]

---

[2] Apparently Betyar limited his contention to collateral estoppel and argued that he actually completed the urine or breath tests. While we are intrigued with his best efforts, we limit our discussion to the issue he argues and do not address whether Betyar in fact completed the tests.

In his petition for peremptory writ of mandate Betyar argued the revocation was invalid because he had not been properly advised of his testing obligations under section 13353, the DMV was bound by the prior judicial determination that he had completed a chemical test, and the DMV lacked statutory authority to revoke his license for two years. The question of whether Betyar was properly advised of the implied consent law is not an issue in this appeal.

DISCUSSION

I

Under the implied consent law, any person who drives a motor vehicle is deemed to have given his or her consent to chemical testing to determine the alcohol or drug content of the blood if lawfully arrested for driving under the influence or alcohol, drugs, or both. If a person refuses to submit to or fails to complete the required testing, the DMV must suspend or revoke that person's driving privilege. (§ 13353.) ▮▮▮ The DMV correctly asserts the court erred in ruling the DMV was collaterally estopped from finding Betyar had refused or failed to complete the blood alcohol testing.

▮▮▮ Collateral estoppel precludes a party to an action from relitigating in a second proceeding matters litigated and determined in a prior proceeding. (*People* v. *Sims* (1982) 32 Cal.3d 468, 477 [186 Cal.Rptr. 77, 651 P.2d 321]. Traditionally, courts have found collateral estoppel a bar to relitigation of an issue decided at an earlier hearing "if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; if (2) the previous [proceeding] resulted in a final judgment on the merits, and if (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding]." (*People* v. *Taylor* (1974) 12 Cal.3d 686, 691 [117 Cal.Rptr. 70 [527 P.2d 622].) The absence of any one of the foregoing precludes the application of collateral estoppel. ▮▮▮ The only requirement which has been fully satisfied here is that the previous proceeding resulted in a final judgment on the merits. While we are concerned with the question of privity (see conc. opn. of Woodworth, J., *post*), we limit our discussion to the first requirement.

▮▮▮ Initially we wish to stress that not only must the issue " 'necessarily decided at the previous [proceeding be] identical to the one which is sought to be relitigated,' " but that issue must have been actually litigated in the earlier proceeding. (*People* v. *Sims, supra,* 32 Cal.3d at p. 484, citing *People* v. *Taylor, supra,* 12 Cal.3d at p. 691.) An issue is actually litigated only when it is raised by the pleadings and factually resolved either by proof or failure of proof. (*Ibid.*) ▮▮▮ Here the issue of Betyar taking and completing a chemical test was not resolved in this manner in his criminal case.

Accordingly, collateral estoppel is inapplicable. Other cases have held similarly.

In *Skinner* v. *Sillas* (1976) 58 Cal.App.3d 591 [130 Cal.Rptr. 91] Skinner initially refused to take a urine test, but requested and was given permission to take it four and one-half hours later. Skinner pleaded guilty to a charge of violating section 23102 (now § 23152) at which time the district attorney stipulated he had given a urine sample and had not refused to abide by the implied consent law. The court held the stipulation did not collaterally estop the DMV from suspending his license because "[a] conviction of the charge made could have been obtained without a chemical test which determines the amount of alcohol in the blood. The stipulation even if legally sustainable, therefore, was not necessary to the judgment." (*Id*. at p. 597; see also *Pease* v. *Pease* (1988) 201 Cal.App.3d 29 [246 Cal.Rptr. 762] (trial court in a civil proceeding may not give collateral estoppel effect to a criminal conviction involving the same issues where the conviction resulted from a guilty plea because defendant's guilt not fully litigated); and *Reed* v. *Department of Motor Vehicles* (1979) 102 Cal.App.3d 662 [164 Cal.Rptr. 373] (court's comment that it would not treat the case as a refusal case unnecessary to judgment of conviction following a plea of nolo contendere to violating section 23102).) Here the parties' stipulation that Betyar "did take and complete a chemical test" was not a matter "litigated" or necessary to his conviction of driving under the influence following the negotiated plea. We therefore conclude the court erred in granting Betyar's petition for writ of mandate.

## II

■ The parties also disagree on the version of section 13353 in effect at the time of Betyar's arrest on July 14, 1986, and whether the DMV was required to revoke his license for one or two years. The confusion is created by a series of amendments to section 13353, one of which included a typographical error.

Effective January 1, 1985, the relevant portion of section 13353 provided: "(b) If any person refuses the officer's request to submit to, or fails to complete, a chemical test or tests, upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23152 or 23153 and that the person had refused to submit to, or did not complete, the test or tests after being requested by the officer, the department shall . . . (2) suspend the person's privilege to operate a motor vehicle for a period of *one year* if the person has previously been convicted of a violation of Section 23152, 23153, or 23103 as specified in Section 23103.5 within five years of the date of the refusal, . . ." (§ 13353, subd. (b), as amended Stats. 1984, ch. 326, § 1,

pp. 1589-1590, italics supplied.) Section 13353 was amended twice during 1985, once by the Assembly and once by the Senate. Assembly Bill No. 331, the La Follette-Katz Chemical Test Enhancement Act (Stats. 1985, ch. 735, § 2, p. 2386) renumbered and made other minor changes to the subsection at issue here, but left unchanged the existing provision for a one-year license suspension for drivers with previous convictions. The amended subsection read: "(a) If any person refuses the officer's request to submit to, or fails to complete, a chemical test or tests pursuant to Section 23157, upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23152 or 23153 and that the person had refused to submit to, or did not complete, the test or tests after being requested by the officer, the department shall . . . (2) suspend the person's privilege to operate a motor vehicle for a period of *one year* if the person has previously been convicted of a violation of Section 23103 as specified in Section 23103.5, 23152 or 23153 within five years of the date of the refusal, . . ." (*Ibid.*, italics supplied.)

Senate Bill No. 500 (Stats. 1985, ch. 1330, §§ 1-2, pp. 4662-4666) was enacted shortly after Assembly Bill No. 331 and required the DMV to revoke the driving privilege for *two years* if the person had a previous conviction within the last five years. Section 1 embodied only the Senate wording of the amendment and read: "(b) If any person refuses the officer's order to submit to, or fails to complete, a chemical test or tests, upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23152 or 23153 and that the person had refused to submit to, or did not complete, the test or tests after being requested by the officer, the department shall . . . (2) revoke the person's privilege to operate a motor vehicle for a period of *two years* if the person has been convicted of a separate violation of Section 23103 as specified in Section 23103.5, 23152, or 23153 within five years of the date of the refusal, . . ." (*Id.* at p. 4663, italics supplied.) Section 2 provided an alternative version of the amendment which reflected the renumbering proposed in Assembly Bill No. 331 in addition to the substantive changes found in Section 1 of the Senate bill. Section 2 stated: "(a) If any person refuses the officer's order to submit to, or fails to complete, a chemical test or tests pursuant to Section 23157, upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23152 or 23153 and that the person had refused to submit to, or did not complete, the test or tests after being requested by the officer, the department shall . . . (2) revoke the person's privilege to operate a motor vehicle for a period of *two years* if the person has been convicted of a separate violation of Section 23103 as specified in Section 23103.5, 23152, or

23153 within five years of the date of the refusal, . . . ." (*Id.* at p. 4665, italics supplied.) Section 7 of Senate Bill No. 500 attempted to set forth conditions under which sections 2 and 3[3] would become operative. Section 7 provided: "Sections 2 and 3 of this bill incorporates [*sic*] amendments to Section 13353 of the Vehicle Code proposed by both this bill and AB 331 as reflected in that section and in Section 23157 proposed by AB 331. They shall only become operative if (1) both bills are enacted and become effective on *January 1, 1987,* (2) each bill amends Section 13353 of the Vehicle Code and AB 331 adds Section 23157 to the Vehicle Code, and (3) this bill is enacted after AB 331, in which case Section 1 of this bill shall not become operative." (Stats. 1985, ch. 1330, § 7, p. 4668, italics supplied.)

Both Assembly Bill No. 331 and Senate Bill No. 500 were enacted by the Legislature and the Senate bill was enacted after the Assembly bill. However, the bills became effective January 1, 1986 (Gov. Code, § 9600), not 1987 as stated as a condition in section 7. The error in reciting the effective date of both bills apparently led the Legislature to "[find] and [declare] that, through a technical error in Section 7 of Chapter 1330 of the Statutes of 1985, the provisions of that chapter which incorporate the provisions of Chapter 735 of the Statutes of 1985 into the provisions of Chapter 1330, do not become operative if that section 7 is read literally." (Stats. 1986, ch. 527, § 8, p. 1883.) The Legislature therefore introduced Senate Bill No. 1850 (Stats. 1986, ch. 527, §§ 1-9, pp. 1880 et seq.) to correct the error, declaring that "this bill does not change, but is declaratory of, existing law." (Stats. 1986, ch. 527, § 8, pp. 1883-1884.) The relevant portion of Senate Bill No. 1850 tracks the language found in section 2 of Senate Bill No. 500. The bill was passed as urgency legislation effective July 24, 1986, 10 days after Betyar's arrest. (Stats. 1986, ch. 527, § 9, p. 1884.) Thus the question is which of the various amendments was controlling law on July 14, 1986, when Betyar was arrested.

If the insertion of "January 1, 1987" instead of "January 1, 1986" is viewed as a mere inadvertent clerical error of no material effect, the court may correct the error "to give effect to the plain intent of the legislature as deduced from the whole act then under consideration." (*California Loan etc. Co.* v. *Weis* (1897) 118 Cal. 489, 497 [50 P. 697] (where the word "June" was inserted where "July" was intended); see also *Pond* v. *Maddox* (1869) 38 Cal. 572 (amendment inadvertently increased the tax collector's salary immediately after two amendments had reduced the salary); *People* v. *Bradford* (1905) 1 Cal.App. 41 [81 P. 712] (criminal statute inadvertently referred to acts constituting other crimes as listed in part II of the Penal Code where those acts actually found in part I).) The Legislature clearly

---

[3] Section 3 relates to the addition of section 23157 and is not directly relevant to the issue of statutory construction under consideration here.

intended to require the DMV to suspend a license for two years where the driver had one previous conviction. (Stats. 1986, ch. 527, § 8, pp. 1883-1884.)

However, even if the error is viewed as more than a mere typographical error, we conclude that under Senate Bill No. 500 a two-year suspension was required for drivers who refused to complete a chemical test before the effective date of the urgency legislation. Under our reading of Senate Bill No. 500, the provisions of section 1 were unaffected by the technical error found in section 7. Section 1 was clearly an alternative to sections 2 and 3 and became effective January 1, 1986, upon the failure of the conditions set forth in section 7, that is, that "both bills . . . become effective on January 1, 1987." As between the Assembly and Senate bills, section 1 of Senate Bill No. 500 was the later amendment to section 13353. Where there are two amendments to the same statute, the last act is the latest expression of legislative will and must prevail. (*Goodwin & Co.* v. *Buckley* (1880) 54 Cal. 295, 296.) We therefore conclude the DMV properly revoked Betyar's license for two years pursuant to section 13353.

## DISPOSITION

Judgment reversed with directions to the court to vacate its judgment granting the peremptory writ of mandate and awarding attorney's fees and costs to plaintiff Betyar.

Benke, J., concurred.

**WOODWORTH, J.**\*—I concur in the majority opinion only out of deference to other decisions in *Pawlowski* v. *Pierce* (1988) 202 Cal.App.3d 692 [249 Cal.Rptr. 49] and *Lofthouse* v. *Department of Motor Vehicles* (1981) 124 Cal.App.3d 730 [177 Cal.Rptr. 601]. Those cases convincingly establish that there is no privity between the Department of Motor Vehicles and the district attorney as required for collateral estoppel to apply. The *Skinner* and *Reed* cases are inapposite. Unlike those cases, there was here an essential factual finding by the municipal court that plaintiff completed a chemical test. That court thereupon dismissed (i.e., adjudicated) the enhancement allegation. Hence privity is the only missing element of collateral estoppel.

---

\*Assigned by the Chairperson of the Judicial Council.