[No. H005009. Sixth Dist. Oct. 31, 1989.]

In re PEDRO C., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
PEDRO C., Defendant and Appellant.

**COUNSEL**

Juliana Drous, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye, Dane R. Gillette and Christopher Grove, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

ELIA, J.—Appellant Pedro C. appeals a juvenile court order determining that his Penal Code section 245, subdivision (b) violation was included within the terms of Welfare and Institutions Code section 707, subdivision (b).[1] He claims the juvenile court lacked jurisdiction to review a previous, contrary determination by a juvenile court referee, and that the juvenile court's action was barred by double jeopardy and collateral estoppel. We affirm.

On January 27, 1988, a section 602 petition was filed in Santa Clara County alleging that appellant had violated Penal Code section 245, subdivision (b) (two counts) and Vehicle Code section 23103 (one count).[2] At a hearing on April 14, appellant admitted one count of violating Penal Code section 245, subdivision (b); the other two counts were dismissed.

An order transferring proceedings to Santa Cruz County, appellant's legal residence, was filed on April 15. Transfer was accepted on April 19. A supplemental petition alleging that appellant had violated the terms of his

---

[1] All further references are to the Welfare and Institutions Code unless otherwise noted.
[2] A recitation of the facts underlying these allegations is unnecessary to a resolution of the issues in this appeal.

Santa Cruz County wardship was filed on April 20. On April 27, appellant admitted the allegations of the supplemental petition. At a dispositional hearing on May 11 before a juvenile court referee, the court committed appellant to the California Youth Authority (CYA). On June 7, CYA apparently wrote to the court requesting that it make a finding pursuant to California Rules of Court, rule 1373(c) whether the Penal Code section 245, subdivision (b) offense was one listed in section 707, subdivision (b).[3] CYA correctly pointed out that pursuant to section 1769, if the offense is one listed in section 707, subdivision (b), it would have jurisdiction over appellant until he reaches age 25. If the offense is not listed in that section, however, its jurisdiction over appellant would terminate when he reaches 21.

The juvenile court took up CYA's request at a noticed 15-day review hearing on June 8, 1988 as follows: "THE REFEREE: The Youth Authority wrote to the Court and asked us to specify whether or not the committing offense was a 707(b) offense. I don't think it is. It's a 245(b). ¶ [ASSISTANT DISTRICT ATTORNEY]: That was Santa Clara's charging. I forget how it's worded. ¶ THE REFEREE: The Petition says: 'assault on a peace officer'— 'committed an assault with a deadly weapon on a peace officer.' ¶ [ASSISTANT DISTRICT ATTORNEY]: 707(b) includes assault by any means and force likely to produce great bodily injury. ¶ THE REFEREE: But it wasn't alleged. Are we in accord? ¶ [ASSISTANT DISTRICT ATTORNEY]: I guess. ¶ THE REFEREE: That is what the order is."

On June 24, CYA apparently wrote a second letter to the juvenile court forwarding a 1982 Attorney General's opinion (65 Ops.Cal.Atty.Gen. 359) that all Penal Code section 245 offenses fell within section 707, subdivision (b). This letter was construed as a request for reconsideration of the referee's order.

At a hearing on August 8, 1988, before the juvenile court referee, appellant's attorney questioned whether the referee had jurisdiction to reconsider his prior section 707, subdivision (b) determination, and requested the matter be reset before the presiding juvenile court judge. Although he granted a continuance, the referee refused this request, indicating appellant could request a rehearing.

A subsequent hearing, on September 8, 1988, was heard before a juvenile judge, for reasons that are unexplained in the record. The judge determined

---

[3] Neither this nor the subsequent letter from CYA was made part of the appellate record. These details are gleaned from appellant's "Motion to Preclude Juvenile Court Jurisdiction and Supporting Points and Authorities," filed on August 31, 1988, and the reporter's transcript of the September 8, 1988, hearing before Judge Black.

that he had authority under section 779 to reconsider the referee's section 707, subdivision (b) determination, and held that the prior determination had been in error. This appeal ensued.

JURISDICTION

■ Appellant first argues that the juvenile court had no jurisdiction to reconsider the referee's order because the court's jurisdiction over a minor adjudged a ward of the court terminates when his commitment to CYA goes into effect.

Respondent counters that as a matter of law, appellant's offense "compelled" a section 707, subdivision (b) determination, and that the referee's determination to the contrary was unauthorized and therefore void. We are unpersuaded by this argument.

A determination whether an offense comes within the purview of section 707, subdivision (b) is required by California Rules of Court, former rule 1373(c). (See also Judicial Council of Cal., Ann. Rep. (1984) p. 85; *In re Anthony B.* (1989) 213 Cal.App.3d 670 [261 Cal.Rptr. 799].) ■ We agree with *In re Rodney F.* (1988) 203 Cal.App.3d 177, 188 [249 Cal.Rptr. 424] that its omission is a clerical error which a juvenile court is empowered to correct. Appellant cites *In re Anthony B., supra,* 213 Cal.App.3d 670, which disagrees with this conclusion. In that case, however, a section 707, subdivision (b) determination was made by the juvenile court ex parte three years after the appellant was adjudicated delinquent; the appellate court held this violated appellant's due process rights. (*In re Anthony B., supra,* 213 Cal.App.3d at p. 673.) Here, in contrast, the correction was made at a noticed hearing, with counsel present, four months after the adjudication. In this factual context, we are not persuaded by *Anthony B.* that the juvenile court had no power to correct the error.

■ Respondent argues, conversely, that the referee's original determination was void because it was incorrect. The jurisdictional issue turns, however, not on whether the referee decided the issue correctly, but on whether the juvenile *court* had jurisdiction to review the referee's determination.

The juvenile judge stated that his redetermination of the section 707, subdivision (b) issue was being made under the authority of section 779 which states "The Court committing a ward to the Youth Authority may thereafter change, modify or set aside the order of commitment." We have not found, and appellant has not cited, any case prohibiting a juvenile court's reconsideration of a section 707, subdivision (b) determination

under the authority of this statute. While section 779 may not be used to vacate a CYA commitment once it has been made (see *In re Owen E.* (1979) 23 Cal.3d 398, 406 [154 Cal.Rptr. 204, 592 P.2d 720]; *In re James A.* (1980) 101 Cal.App.3d 332, 338-339 [161 Cal.Rptr. 588]; *In re Donald S.* (1988) 206 Cal.App.3d 134, 138 [253 Cal.Rptr. 274]), this is not such a case. The juvenile court was not reconsidering the dispositional order—the CYA commitment itself—but only the length of CYA's jurisdiction over appellant. Nothing in this action undermines the CYA commitment, impinges on CYA's authority to determine when, within its jurisdiction, it can release or parole appellant, substitutes the court's judgment for that of CYA (*In re James A., supra,* 101 Cal.App.3d at p. 339) or indicates that contrary to section 779's requirements, the court failed to consider the effect of its determination on CYA.

We have no difficulty concluding that the referee's initial determination was an authorized correction of a clerical error (Cal. Rules of Court, rule 1391(d)), and that the juvenile judge's reconsideration of this determination was authorized by section 779.

DOUBLE JEOPARDY

 Appellant next argues that a redetermination of the section 707, subdivision (b) issue was barred by the prohibition against double jeopardy contained in article I, section 15 of the California Constitution.

 The "protection against double jeopardy applies to juvenile offenders as well as to adults." (*In re James M.* (1973) 9 Cal.3d 517, 520 [108 Cal.Rptr. 89, 510 P.2d 33].) Jeopardy attaches in a juvenile delinquency proceeding "when the first witness is sworn at the adjudicatory phase of the jurisdictional hearing." (*In re Abdul Y.* (1982) 130 Cal.App.3d 847, 855-856 [182 Cal.Rptr. 146].) Thereafter, a juvenile cannot be retried unless there is a mistrial. (*T.P.B.* v. *Superior Court* (1977) 66 Cal.App.3d 881, 884 [136 Cal.Rptr. 311].)

 This prohibition does not preclude all subsequent hearings before a juvenile court, however. In *In re Donald L.* (1978) 81 Cal.App.3d 770, 773 [146 Cal.Rptr. 720], a referee granted appellant's motion to suppress unlawfully seized evidence and dismissed a delinquency petition prior to a jurisdictional hearing. In a subsequent rehearing of the suppression motion before a juvenile court, the seizure was upheld. And since no additional jurisdictional hearing was involved, modification of a dispositional order increasing the length of a juvenile's commitment was held not to violate the double jeopardy prohibition in *In re Glen J.* (1979) 97 Cal.App.3d 981, 987 [159 Cal.Rptr. 148].

In this case, appellant was subjected to no further adjudicatory or dispositional hearings. Nor was the state given the opportunity to present new evidence. The juvenile judge's redetermination was of the purely legal issue whether appellant's offense fell within the ambit of section 707, subdivision (b). Although the consequence of this redetermination—an additional four years of CYA jurisdiction—was significant, the juvenile court's action is more analogous both to the redetermination of the suppression motion in *Donald L., supra,* 81 Cal.App.3d 770, and to the commitment modification in *Glen J., supra,* 97 Cal.App.3d 981, than to the postacquittal appeal held improper by the Supreme Court on double jeopardy grounds in *Smalis* v *Pennsylvania* (1986) 476 U.S. 140 [90 L.Ed.2d 116, 106 S.Ct. 1745]. No further proceedings of any kind, nor any further " ' "resolution of factual issues going to the elements of the offense charged" ' " (*id.* at p. 146 [90 L.Ed.2d at p. 122], quoting *United States* v. *Martin Linen Supply Co.* (1977) 430 U.S. 564, 570 [51 L.Ed.2d 642, 650, 97 S.Ct. 1349]) is contemplated as a result of the juvenile judge's action. We therefore conclude that the bar against double jeopardy was not offended by the redetermination of the section 707, subdivision (b) issue in this case.

■ A similar response applies to appellant's third argument, that the juvenile court's redetermination was barred by the doctrine of collateral estoppel. ■ This doctrine bars a party from relitigating in a second proceeding matters litigated and determined in a prior proceeding. (*People* v. *Sims* (1982) 32 Cal.3d 468, 477 [186 Cal.Rptr. 77, 651 P.2d 321]; *Betyar* v. *Pierce* (1988) 205 Cal.App.3d 1250, 1254 [252 Cal.Rptr. 907].) Collateral estoppel bars relitigation of an issue decided at a previous hearing " 'if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; if (2) the previous [proceeding] resulted in a final judgment on the merits; and if (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding]. [Citations omitted.]' " (*People* v. *Taylor* (1974) 12 Cal.3d 686, 691 [117 Cal.Rptr. 70, 527 P.2d 622].) An issue is "actually litigated," however, only when it is "raised by the pleadings and factually resolved either by proof or failure of proof." (*Betyar* v. *Pierce, supra,* 205 Cal.App.3d at p. 1254.)

■ No factual issue existed in this case as to whether appellant's offense fell within section 707, subdivision (b); the question was one of law. Since no proof or failure of proof was involved in the referee's original determination, we conclude the juvenile court judge's redetermination was not barred by collateral estoppel.

SECTION 707 DETERMINATION

■ Appellant does not ask us to resolve the underlying issue; he asks us to reverse the judgment on the three grounds discussed above. If the

juvenile court's redetermination of the section 707, subdivision (b) issue was incorrect, however, it would mandate a reversal of the order appealed from. A resolution of this issue is therefore necessary.

Appellant admitted a Penal Code section 245, subdivision (b) violation. This section reads "Every person who commits an assault with a deadly weapon or instrument, other than a firearm, or by any means likely to produce great bodily injury upon the person of a peace officer or fireman engaged in the performance of his or her duties . . . ." Appellant was charged in Santa Clara County with "an assault with a deadly weapon or instrument, to wit: motor vehicle upon . . . a peace officer . . . ."

The referee concluded that because appellant's section 602 petition did not charge him with "Assault by any means of force likely to produce great bodily injury," (§ 707, subd. (b)(14)), appellant's offense did not fall within section 707, subdivision (b). The precise issue before us is thus whether section 707(b)(14) embraces violations of Penal Code section 245, subdivision (b) which are charged as assaults with deadly weapons or instruments, rather than as assaults by means likely to produce great bodily injury. We conclude it does.

In determining whether section 707, subdivision (b)(14) includes assault with a deadly weapon, our primary goal is to ascertain the intent of the Legislature. (*In re Michael G.* (1988) 44 Cal.3d 283, 289 [243 Cal.Rptr. 224, 747 P.2d 1152].) Section 707, subdivision (b) was enacted in substantially its present form by Statutes 1976, chapter 1071, section 28.5. This subdivision contains descriptions of serious felonies, including murder (§ 707, subd. (b)(1)), assault with intent to murder (§ 707, subd. (b)(12)), and assault with a firearm or destructive device (subd. (b)(13)). Minors who have committed these offenses must be evaluated to determine if they are fit subjects to be dealt with under the Juvenile Court Law (§ 707, subd. (c)). If they are, and are subsequently committed to CYA, its jurisdiction over them extends, pursuant to section 1769, subdivision (b), until their 25th birthday.

Given this statutory scheme, for this court to determine that assault with a deadly weapon is not a section 707, subdivision (b) offense would be to elevate form over substance. (See *In re Anthony B., supra,* 213 Cal.App.3d at p. 677.) " 'A deadly weapon is one likely to produce death or great bodily injury.' " (*People v. Helms* (1966) 242 Cal.App.2d 476, 486 [51 Cal.Rptr. 484], quoting *People v. Fugua* (1881) 58 Cal. 245, 257; *People v. Cabral* (1975) 51 Cal.App.3d 707, 713 [124 Cal.Rptr. 418]; *People v. Morlock* (1956) 46 Cal.2d 141, 145 [292 P.2d 897].) Necessarily, then, assault with a deadly weapon includes assault by means likely to produce great bodily injury.

We therefore concur with the Attorney General's conclusion (65 Ops.Cal.Atty.Gen. 359 (1982)) that appellant's Penal Code section 245, subdivision (b) offense falls within the purview of section 707, subdivision (b), and that the juvenile court judge's redetermination was correct.

The order is affirmed.

Capaccioli, Acting P. J., and Premo, J., concurred.

A petition for a rehearing was denied November 21, 1989, and appellant's petition for review by the Supreme Court was denied February 15, 1990.